UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

RANDOLPH J. GREENE,

    Plaintiff

    v.

DISTRICT OF COLUMBIA

**BOARD OF TRUSTEES OF**
**THE UNIVERSITY OF**
**THE DISTRICT OF COLUMBIA**

WILLIAM L. POLLARD;

CLEMMIE SOLOMON;

BRIAN BAKER;

WILLIAM THOMAS;

**MIREILLE B. TSHITEYA**
**671 Audrey Lane, Apt. #302**
**Oxon Hill, MD. 20745;**

    Defendants.

Civil Action#05-1097(RWR)

## RELATION BACK AMENDED COMPLAINT

## (AND DEMAND FOR A JURY TRIAL)

### I. JURISDICTION

The court has jurisdiction of this matter pursuant to and in accordance with Title 1, D.C. Codes §§102 and 109(a), Title 38, D.C. Codes §1202.01(a), Title 28, United States Codes §§1331, 1332, 1343(a)(3),(b), 2201-02, Title 42, United States Codes§§1981 and 1983, and Article III, §2, clause 1 of the Constitution of the United

RECEIVED

NOV 1 3 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

States, including, but not limited to the first, fifth, eighth and fourteenth amendments thereto. The amount in controversy exceeds any statutory required minimum. Venue is provided for by Title 28, United States Codes §§1391 and or 1404.

## II. PARTIES

1.  Plaintiff Randolph J. Greene, is a resident of Washington, D.C., holding a A.A.S. degree from the University of the District of Columbia (herein after referred to as "UDC"), in paralegal studies. At all times referred to herein, plaintiff was enrolled at UDC during the Spring Semester 2005, seeking a B.A. degree in Business Management.

2.  Defendant Washington, D.C. (hereinafter referred to as "District of Columbia"), pursuant to Title 1, D.C. Codes §§102 and 109, shall defend any civil action, in any court or federal forum against the District of Columbia, or its officers, employees, or agents, and shall assume any liability resulting from such action or proceeding. The District of Columbia is joined in this action pursuant to Rule 19, of the Federal Rules of Civil Procedure as an indispensable party. Defendant District of Columbia is a sovereign entity who has a proprietary interest in the physical structure of UDC and is sued in its official capacity only.

3.  Defendant Board of Trustees of the District of Columbia, is joined in this action pursuant to Title 38, D.C. Codes §§1202.01 and 1202.06, and charged with the responsibility for governing the University of the District of Columbia (hereinafter referred to as "UDC"), its agents, representatives and to determine, control, supervise, manage and govern all affairs of UDC.

4. Defendant William L. Pollard, pursuant to and in accordance with Title 8, District of Columbia Municipal Regulations (hereinafter referred to as "DCMR") §202.1, has full authority and responsibility for the academic and administrative affairs and operations of UDC. Defendant Pollard is sued in his individual and official capacities.

5. Defendant Clemmie Solomon is an appointee of defendant Pollard at UDC. Defendant Solomon is the vice president of student affairs. <u>Defendant Solomon receives all instances of alleged nonacademic misconduct and confers with others as to how to handle the matter and notifies all parties.</u> Defendant Solomon is sued individually and in his official capacity.

6. Defendant Brian Baker, is in charge of the <u>UDC law library.</u> Defendant Baker is sued individually and in his official capacity.

7. Defendant William Thomas is a Technician in the law library in the school of law. Defendant Thomas is sued in his individual and official capacities.

8. <u>Defendant Mireille B. Tshiteya, at all times referred to herein was a student in UDCs school of law. Defendant Tshiteya is sued in her individual capacity.</u>

### III. FACTS

9. <u>It has been the custom and practice of the administrators of the law library at UDC to permit the plaintiff to use the computer lab to prepare legal pleadings whenever the plaintiff expressed a need for such access. Plaintiff's Exhibit "E",at 2, ¶7.</u>

10.  At all times referred to in the preceding paragraph, signs were posted in the UDC law school computer lab indicating that use of the computer lab was for the use of law school students only.

11.  Prior to 20 September 2004, no law school student has ever objected to the plaintiff concerning either his presence in the computer lab or his usage of any computers.

12.  On more than one occasion, law school students have even deferred to the plaintiff's express need to use a computer to prepare legal pleadings.

13.  The plaintiff has always been very grateful for such courtesies and shown his respect for the law school and its students by never just walking in the computer lab, sitting down and start typing.  The plaintiff would always request permission first from someone on duty in the law library.

14.  On 20 September 2004, between 9 and 10 p.m., plaintiff requested permission from defendants District of Columbia,  Board of Trustees,Pollard, Solomon, Baker, by and through defendant Thomas to use the computer lab to prepare legal pleadings for filing in the United States Court of Appeals for the District of Columbia Circuit that night.

15.  The defendants referred to in the preceding paragraph  granted plaintiff's request and gave him directions to the computer lab.

16.  On 20 September 2004, between 9 and 10 p.m., plaintiff  entered the UDC law school computer lab, pausing near the entrance, momentarily to visually search for an un-occupied computer terminal.

17.  While the plaintiff was visually searching for an un-occupied computer terminal, defendant Tshiteya was lounging ( i.e., sitting at a desk, talking on a telephone) in the computer lab, near the same entrance that the plaintiff had just came through.

18.   While the plaintiff was standing in close proximity to defendant Tshiteya visually searching the computer lab for an un-occupied computer terminal, defendant Tshiteya swooned after she observed plaintiff and became enamored and mesmerized.

19.  On information and belief, on 20 September 04, defendant Tshiteya was a single woman.

20.  At all times referred to herein, the plaintiff was a fifty (50) plus year old, un-comely, little, thin man.

21.  Subsequently, plaintiff observed an un-occupied computer terminal at the opposite end of the computer lab and walked towards it.

22..  After the plaintiff reached the un-occupied computer terminal, plaintiff sat down and removed draft pleadings from his book bag to prepare to type them.

23.  At this point in time, the plaintiff was in a peaceful frame of mind.

24. While the plaintiff was accessing Microsoft Office on the computer terminal, plaintiff was stopped by a very loud, shrill, strident female's voice which stated: "Are you a law school student"; "Do you have law school ID"?

25. The plaintiff did not know if he was being addressed because he couldn't see the person talking due to a wooden construction on the computer terminal so plaintiff stood up.

26.  After the plaintiff stood up, he was facing the opposite end of the computer lab where defendant Tshiteya was standing, staring at the plaintiff with an angry expression on her face.

27.Defendant Tshiteya did not identify herself to the plaintiff.  Plaintiff's Exhibit "F", at 4-5.

28..  On information and belief, on 20 September 04, defendant Tshiteya was not:

   (a)  a law enforcement officer Plaintiff's Exhibit "F";

   (b)  a UDC law school employee Plaintiff's Exhibit "F";

29.  The plaintiff asked defendant Tshiteya if she was talking to the plaintiff.

30. Defendant Tshiteya repeated her inquiries.

31. Defendant Tshiteya's voice was:  (a)  very loud;  (b)  demanding;  (c) invasive;  (d)  offensive;  (e)  abusive;  (f)  arrogant;  (g)  insulting;  (h)  un-feminine; and (i)  nerve racking.

32.  Defendant Tshiteya's inquiries and tone of voice has caused the plaintiff to experience  indignation, headaches, wounded pride, humiliation, embarrassment, despair, and a sense of helplessness.

33.  In response to defendant Tshiteya's inquiries, plaintiff stated to defendant Tshiteya, in a moderate tone of voice: "None of your god dam business" and sat back down and started back typing.  Plaintiff's Exhibit "H".

34.  Defendant Tshiteya yelled down to the plaintiff that she was calling security.

35. Defendant Tshiteya's declaration that she was calling law enforcement

officers on the plaintiff caused the plaintiff to experience embarrassment, humiliation, wounded pride, indignation, despair, headaches, nightmares, fear and a sense of helplessmess.

36.  Plaintiff stood up and in another moderate tone of voice to defendant Tshiteya stated that he had permission to use the computer lab and that plaintiff did not care who she called and sat back down and continued typing.

37. At all times referred to herein, a Mr. Robert Patterson was present during the above referred to colloquy between defendant Tshiteya and the plaintiff.

38. Mr. Robert Patterson informed defendant Tshiteya that if she needed access to a computer, that defendant Tshiteya could borrow Mr. Patterson's lap top. Plaintiff's Exhibit "H".

39. Defendant Tshiteya declined Mr. Patterson's offer without explanation.

40.  On information and belief, on 20 September 2004, defendant Tshiteya did not need access to a computer terminal between 9 and 10 p.m.

41. On information and belief, defendant Tshiteya verbally harassed the plaintiff concerning his presence in the computer lab as a pretext to initiate dialogue with the plaintiff.

42.  Subsequently, two D.C. Government Police Officers responded to defendant Tshiteya's telephone call and escorted plaintiff from the computer lab three floors down to defendant Thomas' work station on B-level in Building 39.

43. There, defendant Thomas was asked if he gave the plaintiff permission to use the computer lab.

44. Defendant Thomas stated yes.

45. One of the two D.C. Government Police Officers asked defendant Thomas did he know that there was a sign posted in the computer lab stating "For law school students only.

46. Defendant Thomas stated that he did not know that.

47. The two D.C. Government Police Officers did not permit the plaintiff to return to the computer lab. Plaintiff's Exhibit "K".

48. As a result of not being allowed to return to the computer lab, the plaintiff was not able to prepare and file a certificate of appealability for filing in the U.S. Court of Appeals for the District of Columbia Circuit.

49. Not being able to prepare and file the certificate of appealability caused the plaintiff to experience loss of confidence, embarrassment, humiliation, wounded pride, indignation, despair, headaches, and a sense of helplessness.

50. During the above referred to colloquy between the two D.C. Government police Officers, defendant Thomas and the plaintiff, defendant Tshiteya exited the computer lab (three floors up) and came down to B-level and entered the law library.

51. After defendant Tshiteya entered the law library, she became verbose. Plaintiff's Exhibit "I".

52. As a result of defendant Tshiteya's verbosity, one of the two D.C. Government Police Officers asked defendant Tshiteya was she trying to provoke the plaintiff.

53. Defendant Tshiteya reacted to the D.C. Government Police Officer's inquiry by leaving UDCs campus rather than returning to the computer lab.

54.  On 21 September 04, defendants District of Columbia, Board of Trustees, Pollard, Solomon and Baker considered defendant Tshiteya's written allocutions.

55 . In defendants District of Columbia, Board of Trustees, Pollard, Solomon and Baker's opinion, the plaintiff's behavior was "appalling" and "abusively rude".

56.   After defendants District of Columbia, Board of Trustees, Pollard, Solomon and Baker concluded that plaintiff's behavior was "appalling" and "abusively rude", the defendants decided to charge plaintiff with nonacademic misconduct on UDCs campus on 20 September 04.

57.  However, the defendants failed to notify the plaintiff that he was being charged with nonacademic misconduct on UDCs campus.

58.  On information and belief, the defendants had access to UDCs student database information during the Spring Semester 2005.  Plaintiff's Exhibit "L".

59.  The defendants  knew  that the plaintiff was attending a class on UDCs campus every Tuesday and Thursday, between 7 and 8:20 p.m., in Building 52. Plaintiff's Exhibit "M".

60.  It would not have been a hardship on the defendants to walk one block from their offices in Building 39, to Building 52, to hand-deliver to plaintiff written notification of the charge of nonacademic misconduct.

61.  After the defendants decided to charge the plaintiff with nonacademic misconduct on UDCs campus, they decided to restrict plaintiff's access to the law school facility.  Plaintiff's Exhibit "E".

62.  Restricting a UDC student, in good standing,  access to a UDC facility

is defined as a sanction in the defendants rules and regulations.

63. On information and belief, defendant Solomon had supervisory authority over the activities referred to in ¶¶56-62.

over the student activities referred to in the preceding paragraph.

64. Between the time that the defendants decided to charge the plaintiff with nonacademic misconduct on UDCs campus and the time that the defendants decided to restrict plaintiff's access to the law school facility, the defendants denied the plaintiff:

   (a) a hearing before an *impartial* tribunal;

   (b) the right to representation at that hearing;

   (c) the right to present evidence at the hearing;

   (d) written findings and reasons for the action taken by that hearing committee;

   (e) the right to appeal;

65. Rather than refer plaintiff's alleged nonacademic misconduct through the proper authority for disposition, defendants District of Columbia, Board of Trustees, Pollard, Solomon and Baker concluded that :

   (a) plaintiff was guilty as charged;

   (b) summarily sanctioned the plaintiff;

66. Defendants District of Columbia, Board of Trustees, Pollard, Solomon and Baker's decision to be the plaintiff's clandestine and *sub silento* judge, jury and executioner establishes s that:

(a)  defendant District of Columbia failed to train and supervise its agents, representatives and subordinates at UDC concerning disciplinary proceedings and dispositions;

(b)  defendant Board of Trustees failed to train and supervise agents, representatives and subordinates at UDC concerning disciplinary proceedings and dispositions;

(c)  defendant Pollard failed to train and supervise and supervise his agents, representatives and subordinates at UDC concerning disciplinary proceedings and dispositions;

(d)  defendant Solomon failed to train and supervise his agents, representatives and subordinates at UDC concerning disciplinary proceedings and dispositions;

(e)  defendant Baker was never trained and supervised concerning disciplinary proceedings and dispositions;

67.  Receiving a permanent ban from the law school facility in the absence of written notice of the charge, a warning that anything plaintiff said could be used against plaintiff, a hearing before an impartial tribunal, representation at that hearing, allowed to present evidence at that hearing including calling witnesses, receiving a copy of the committee's findings and reasons for the action taken and being informed of the right to appeal the decision if dissatisfied caused the plaintiff to experience shock, indignation, headaches, wounded pride, humiliation, embarrassment, despair, and a sense of helplessness.

68. Defendants District of Columbia, Board of Trustees and Pollard promulgated the Code of Student Conduct to regulate students behavior and speech.

69. However, none of the articles in the Code of Student Conduct define or explain what constitutes "appalling" or "abusively rude" behavior.

70. Some of the words plaintiff allegedly spoke to defendant Tshiteya are set forth in the King James version of the Holy Bible but are not proscribed in the defendants written rules and regulations as impermissible speech .

71. On information and belief, the sign posted in the law school's computer lab states "Use of the computer lab is restricted to law school students only". Plaintiff's Exhibit "F".

72. On 20 September 2004, between 9 and 10 p.m., defendants District of Columbia, Pollard, Solomon and Baker failed to use government land to provide alternative access to computer terminals to UDC students who were not attending law school.

73. On Tuesday 10th, May 2005, between 7 and 8 p.m., plaintiff entered UDCs law library to conduct legal research.

74. A Technician sitting behind a desk requested identification.

75. Plaintiff produced UDC identification and was invited to enter the law library.

76. Plaintiff perused the "In this Issue Case Summaries", "Judicial Highlights", "Words and Phrases" and "Key Number Digest" sections in book

numbers 5-12, of the Federal Reporter, 3d series between thirty and forty-five (30-45) minutes and ended his research without incident.

77.  Plaintiff started exiting the law library.  As plaintiff was passing by the desk where the above referred to Technician was sitting, defendant Thomas stated to the plaintiff:"Hey Slick, you would not have gotten in here if I had been here".

78.  The plaintiff kept walking but stated to defendant Thomas that he could come in the law library any time that plaintiff wanted to because no one had told the plaintiff that he could not come in the law library.

79.  Defendant Thomas left the desk he had been sitting at and came out of the law library into the hallway where the plaintiff was and told the plaintiff "You just try it".  Defendant Thomas' tone of voice was not jovial.

80.  The plaintiff left Building 39, B-level to review the notes he had made while in the law library.  At that time, the plaintiff realized that he had failed to review loose leaf legal periodicals and returned to the law library.

81.  However, after the plaintiff entered the law library, a D.C. Government Police Officer stopped the plaintiff. The D.C. Government Police Officer told the plaintiff that he could not enter the law library because he had been banned.

82.  As a result of this ban, the plaintiff was denied the freedom to read legal literature, formulate ideas and add to his knowledge of legal jurisprudence.

83.  Not being allowed the freedom to read legal literature, to formulate ideas and add to his knowledge of legal jurisprudence caused the plaintiff to experience embarrassment, humiliation, wounded pride, indignation, despair, headaches, and a sense of helplessness.

84. On information and belief, defendant Baker banned the plaintiff from the law library and ordered defendant Thomas to enforce his ban.

85. On information and belief, defendant Baker informed defendants District of Columbia, Board of Trustees, Pollard and Solomon of his decision to ban the plaintiff from the law library.

86. On information and belief, defendants District of Columbia, Board of Trustees, Pollard and Solomon approved defendant Baker's decision to ban plaintiff from the law library.

87. On information and belief, defendant Solomon banned plaintiff from the law library and informed defendant District of Columbia, Board of Trustees and Pollard of his decision who did not disapprove of defendant Solomon's decision.

88. On information and belief, after defendants District of Columbia, Board of Trustees and Pollard approved defendant Solomon's decision to ban plaintiff from the law library, defendant Solomon ordered defendant Baker to enforce his ban of plaintiff from the law library

### (a) EXHAUSTION OF ADMINISTRATIVE REMEDIES

89. The plaintiff was not required to exhaust administrative remedies prior to bringing suit in court. Plaintiff's Exhibit "E" at 3, ¶8.

### IV. FIRST CAUSE OF ACTION

90. EXERCISE OF POLICE POWERS: Plaintiff alleges and realleges every allegation set forth above in ¶¶ 1-89 as if they were set forth herein separately and individually. All times referred to herein, defendants acted under color of state law.

91. Defendant Tshiteya, in asking the plaintiff to provide a "credible and

reliable identification" and to "account for his presence in the UDC law library computer lab, defendants District of Columbia, Board of Trustees, Pollard, Solomon, Baker and Tshiteya violated the plaintiff's first amendment right not to communicate, the fourth amendment's right to be secure in his person, the ninth amendment's ban on invasion of privacy and the fourteenth amendment's right to be free of unreasonable searches and seizures.

92. The sign upon which defendant Tshiteya relied upon to challenge the plaintiff's presence in the UDC law school computer lab, is vague, ambiguous and overbroad because the sign did not state that law school students could enforce its restriction or ask unknown peaceful persons in the computer lab to identify themselves.

93. Defendant Tshiteya's conduct was reckless, extreme and outrageous because it caused the plaintiff to suffer emotional distress. Defendant Tshiteya's conduct was such that she knew that emotional distress would be certain or substantially certain to result.

## V. SECOND CAUSE OF ACTION

94. EXERCISE OF FREE SPEECH: Plaintiff alleges and realleges every allegation set forth above in ¶¶ 1-93, and hereby incorporates them by reference thereto. At all times referred to above, defendants acted under color of state law.

95. Defendants District of Columbia, Board of Trustees, Pollard, Solomon, Baker, Thomas and Tshiteya's characterization of the plaintiff's alleged speech as "appalling" and "abusively rude" and restricting the plaintiff's access to a university facility, while plaintiff was enrolled in UDC and in good standing, for the

usage of such alleged speech chills the plaintiff's right to communication and expression in violation of the first and fourteenth amendments to the constitution of the United States.

96.  The grounds upon which defendants District of Columbia, Board of Trustees, Pollard, Solomon, Baker, Thomas and Tshiteya relied upon to characterize the plaintiff's alleged speech as "appalling" and "abusively rude" are vague, ambiguous and overbroad in violation of the first and fourteenth amendments to the constitution of the United States because the plaintiff was not informed in advance what words are impermissible to speak on UDCs campus and because the terms are not set forth in any rule or regulation promulgated by the defendants .

97. The grounds upon which defendants relied upon to restrict plaintiff's access to a UDC facility because of alleged speech are vague, ambiguous and overbroad because the defendants have not promulgated any written rules and regulations proscribing the words attributable to the plaintiff.

98.  The grounds upon which defendants relied upon to sanction plaintiff for alleged speech are vague, ambiguous and overbroad because their written rules and regulations fail to explain or define what speech is "appalling" and "abusively rude".

## VI.  THIRD CAUSE OF ACTION

99. LIBERTY INTEREST:  Plaintiff alleges and realleges every allegation set forth above in ¶¶ 1-98, and hereby incorporates them by reference thereto as if

set forth herein separately and individually. At all times referred to herein, the defendants acted under color of state law.

100. Defendants District of Columbia, Board of Trustees, Pollard, Solomon and Baker's failure to provide the plaintiff with a written copy of the nonacademic charge of misconduct on UDCs campus, advising the plaintiff that anything the plaintiff said could be used against plaintiff, a hearing before an impartial tribunal, the right to representation at that hearing, the right to present evidence on his behalf, including the right to call witnesses on his behalf, a written copy of the statement of findings and reasons for the action taken and the right to appeal the decision of that hearing committee was arbitrary, capricious, whimsical, an abuse of discretion, or otherwise not in accordance with law, contrary to constitutional right, power, or privilege; in excess of statutory authority or limitations in violation of the fifth and fourteenth amendments due process clauses.

101. The grounds upon which the defendants actions were based or guided are arbitrary, capricious, whimsical, unlawful, unconstitutional or vague, ambiguous and overbroad because failing to provide the plaintiff with the rudimentary due process and minimum procedural safeguards referred to above did not further a significant government interest.

102. Defendants District of Columbia, Board of Trustees and Pollard 's failure to train and supervise their agents, representatives and subordinates concerning adjudications of nonacademic misconduct on UDCs campus amounted to a deliberate indifference to the plaintiff's liberty interest in rudimentary due process and minimum procedural safeguards.

103. Defendants District of Columbia, Board of Trustees and Pollard's failure to train and supervise defendants Solomon and Baker caused defendants Solomon and Baker to violate the plaintiff's clearly established rights to rudimentary due process and minimum procedural safeguards.

104. Defendants District of Columbia, Board of Trustees, Pollard and Solomon either knew of defendant Baker's proceedings and dispositions against the plaintiff or they should have known in the proper performance of their official duties.

105. Defendants conduct was reckless, extreme and outrageous because the failure to afford the plaintiff rudimentary due process and minimum procedural safeguards caused the plaintiff to experience emotional distress. Defendants conduct was such that they knew that emotional distress would be certain or substantially certain to result

## VII.  FOURTH CAUSE OF ACTION

106.  THE CODE OF STUDENT CONDUCT:  Plaintiff alleges and realleges every allegation set forth above in ¶¶ 1-105 and herey incorporates them by reference thereto as if set forth herein separately and individually.  At all times referred to herein, defendants acted under color of state law.

107.  Defendants District of Columbia, Board of Trustees, Pollard, Solomon and Baker's failure to provide the plaintiff with a copy of written charges of nonacademic misconduct on UDCs campus, the right to an impartial hearing, representation at that hearing,  the right to present evidence at that hearing including the calling of witnesses, a written copy of that tribunals' findings and

reasons for the action taken, and the right to appeal was arbitrary, capricious, unlawful because the defendants failed to follow their own rules and regulations promulgated in the Code of Student Conduct (2004-2005 STUDENT HANDBOOK) concerning nonacademic misconduct on UDCs campus..

108. The grounds upon which the defendants relied upon to restrict plaintiff's access to a UDC facility for alleged nonacademic misconduct on UDCs campus and disregard their own rules and regulations concerning disciplinary proceedings and dispositions are vague, ambiguous and overbroad because the defendants waiving their disciplinary procedures did not serve a significant government interest.

109. Defendants District of Columbia, Board of Trustees and Pollard's failure to train and supervise their agents, representatives and subordinates concerning the Code of Student Conduct's disciplinary proceedings and dispositions amounted to a deliberate indifference to plaintiff's regulatory rights.

110. Reasonable men in defendants District of Columbia, Board of Trustees Pollard, Solomon and Baker's capacities would have known that they were obligated to follow their own rules and regulations before they restricted plaintiff access to a university facility while the plaintiff was enrolled at UDC and in good standing or they should have known in the proper performance of their official duties.

111. Defendants District of Columbia, Board of Trustees, Pollard and Solomon either knew of defendant Baker's proceedings and dispositions against the plaintiff or they should have known by reason of their official duties.

112.  Defendants conduct was reckless, extreme and outrageous because the failure to follow their own rules and regulations in the Code of Student Conduct caused the plaintiff to experience emotional distress.  Defendants conduct was such that they knew that emotional distress would be certain or substantially certain to result.

### VIII.  FIFTH CAUSE OF ACTION

113. TIME, PLACE AND MANNER RESTRICTIONS:  Plaintiff alleges and realleges every allegation set forth above in ¶¶ 1-110 and by reference thereto, hereby incorporates them as if set forth herein separately and individually.  At all times referred to herein, defendants acted under color of state law.

114.  Defendants District of Columbia, Board of Trustees, Pollard, Solomon, Baker, and Thomas' decision to use government land to provide late night access to computer terminals for law school students only and simultaneously prohibit other students enrolled at UDC, in good standing, access to government owned computer terminals constituted an invidious prior restraint on the plaintiff in violation of the first and fourteenth amendments merely because the plaintiff is not a law school student.

115. Defendants District of Columbia, Board of Trustees, Pollard, Solomon, Baker, Thomas and Tshiteya's  prior restraint on plaintiff's usage of an un-occupied UDC computer terminal to prepare legal pleadings for filing in a federal appellate court did not further a significant government interest.


WHEREFORE, the premises considered, plaintiff respectfully request this Court to:

(a)  Accept jurisdiction of this case or controversy;

(b)  Enter a declaratory judgment that the sign posted in the law school facility relied upon by defendant Tshiteya to exercise police powers on the plaintiff is vague, ambiguous, overbroad and a prior restraint on the plaintiff in violation of the first, fifth and fourteenth amendments to the United States Constitution;

(c)  Enter a declaratory judgment that defendant Tshiteya's questioning of the plaintiff was arbitrary, capricious, unlawful, invasive, an abuse of discretion, or otherwise not in accordance with law, contrary to constitutional right, power, or privilege;  in excess of statutory authority or limitations in violation of the plaintiff's first, fourth, fifth. Ninth and fourteenth amendments to the U.S. Constitution;

(d)  Enter a declaratory judgment declaring defendants characterization of plaintiff's alleged speech as "appalling" and "abusively rude" as vague, ambiguous, overbroad and a prior restraint that chills plaintiff's freedom of expression in violation of the first, fifth and fourteenth amendments to the U.S. Constiution;

(e)  Enter a declaratory judgment declaring defendants failure to provide the plaintiff with a written copy of the nonacademic charge of misconduct on UDCs campus, a warning that anything plaintiff said could be used against him, a hearing before an impartial tribunal, representation of plaintiff's choosing at that hearing, the right to present evidence at that hearing including the calling of witnesses, a printed copy of the findings by that hearing committee and reasons for the action taken , and the right to appeal, who to and the time for so doing to be arbitrary, capricious, whimsical, an abuse of discretion, or otherwise not in accordance with law, contrary to constitutional right, power or privilege;  in excess of statutory

authority, or limitations or short of statutory rights, vague, ambiguous and overbroad in violation of the Code of Student Conduct and the fifth and fourteenth amendments to the U.S. Constitution;

(f)  Enter a declaratory judgment declaring defendants time, place and manner restrictions on the UDC law school computer lab on 20 September 2004, between 9 and 10 p.m., to arbitrary, capricious, vague, ambiguous, overbroad and a prior restraint in violation of the plaintiff's first, fifth and fourteenth amendment rights;

(g)  Enter a declaratory judgment declaring defendants denying plaintiff re-entry to the UDC law library on 10 May 2005, to be arbitrary, capricious, unlawful, an abuse of discretion, or otherwise not in accordance with law, contrary to constitutional right, power, or privilege; in excess of statutory authority or limitations in violation of the plaintiff's first, fifth and fourteenth amendment rights;

(h)  Pursuant to the above declarations, a preliminary and permanent injunction which:

1.  Prohibites defendants, their agents, representatives, subordinates and successors in office delegating authority to law school students *who are not employees of the law school facility* exercising police powers on members of the public, including UDC undergraduates;

2.  Requires defendants, their agents, representatives, subordinates and successors in office to provide UDC undergraduates, in good standing.

alternative late night (i.e., until the time that the university closes) access to computer terminals;

        3. Requires defendants, their agents, representatives, subordinates and successors in office to instruct law school student employees to call the D.C. Government Police Office on campus for the enforcement of any perceived violation of any rules, regulations or posted signs for the orderly functioning of the law school facility;

        4. Requires defendants, their agents, representatives, subordinates and successors in office to undergo bi-annual training concerning adjudications of disciplinary proceedings and dispositions referred to in the Code of Student Conduct;

        5. Prohibites defendants, their agents, representatives, subordinates and successors in office from making unilateral conclusions on UDC undergraduates guilt concerning alleged nonacademic misconduct;

        6. Requires defendants, their agents, representatives, subordinates and successors in office to refer alleged acts of misconduct to the appropriate authority for further disciplinary proceedings and dispositions;

        7. Prohibites defendants, their agents, representatives, subordinates and successors in office from imposing unilateral law library restrictions on UDC undergraduates;

        8. Expunge all references of the 20 September 04, law school facility alleged incident from all university records, logs, journals, etc., etc;

9. Requires defendants Pollard and Baker to print plaintiff an apology in UDC publications (including, but not limited to law school facility publications);

(i)  In addition to the above, plaintiff respectfully request:

1. Appointment of counsel;

2. A pretrial conference;

3. A trial by jury on all issues triable by jury;

4. Attorney and paralegal fees and costs in bringing this action;

5. Five-hundred thousand (500,000) dollars in compensatory and two-hundred and fifty-thousand (250,000) dollars in punitive damages, jointly and severally from the defendants for every day that the plaintiff was banned from the law school facility;

6. Such other and further relief as the court may deem just and proper;

Respectfully submitted,

RANDOLPH J. GREENE
P.O. Box 36303
Washington, D.C. 20020
Plaintiff Pro Se
(202) 561-4503