UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

RANDOLPH J. GREENE,

        Plaintiff                             Civil Action #05-1097(RWR)

v.

DISTRICT OF COLUMBIA; et al.,

        Defendants.


PLAINTIFF'S RESPONSE TO
DEFENDANTS SECOND MOTION TO DISMISS
OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

      AND NOW COMES Randolph J. Greene, plaintiff, pro se, and pursuant to the Court's Order of 3 January 06, pertaining to the university defendants' second motion to dismiss, or in the alternative for summary judgment, respectfully request this Court to deny defendants' second motion to dismiss, or in the alternative, for summary judgment, for the following, but not limited reasons:

      1. The plaintiff's Relation-Back Amended Complaint states a claim upon which relief may be granted.

      2. The university defendants' second motion to dismiss, or in the alternative, for summary judgment is frivolous.

      3. This Court's discretion.

Attached hereto in support of this response is plaintiff's memorandum of law, on points and authorities, and accompanying exhibits.

Respectfully submitted,

RANDOLPH J. GREENE
P.O. Box 36303
Washington, D.C. 20020
(202) 561-4503
Plaintiff Pro Se

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

RANDOLPH J. GREENE,

       Plaintiff                                               Civil Action #05-1097(RWR)

      v.

DISTRICT OF COLUMBIA; et al.,

       Defendants.


PLAINTIFF'S MEMORANDUM OF LAW
ON POINTS AND AUTHORITIES IN SUPPORT OF
RESPONSE TO UNIVERSITY DEFENDANTS SECOND MOTION
TO DISMISS, OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

I. STATEMENT

This is a *pro se* civil rights action pursuant to , *inter alia* ,Title 28, United States Codes §§1331,1343(a)(3), (b), 2201-02, Title 42, United States Codes §1983 and Article III, §2, clause 1, of the constitution of the United States of America, against the defendants who accused the plaintiff of nonacademic misconduct on the second floor of Building 39, on UDCs main campus, adjudged the plaintiff guilty of the same alleged misconduct, from *ianuis clausis* and imposed a permanent restriction of access to an area, in Building 39, three floors down, minus, *inter alia*, adequate notice and opportunity for a hearing,.

On or about 28 November 2005, the plaintiff submitted a motion to file an accompanying relation-back amended complaint. On 3 January 06, this Court granted plaintiff's request. Thereafter, the defendants submitted a second motion to dismiss, or for summary judgment. This memorandum is submitted in support of

plaintiff's response to the university defendants' second motion to dismiss, or in the alternative, for summary judgment. The plaintiff has yet to receive any responsive pleading from defendant Tshiteya.

## II. ARGUMENT

### FIRST CAUSE OF ACTION
### EXERCISE OF POLICE POWERS

### FIFTH CAUSE OF ACTION
### TIME, PLACE AND MANNER RESTRICTIONS

The defendants' reliance on an un-reported case involving a homeless couple, who tied up a computer terminal and printer, only to junk their product, in the David A. Clark School of Law, is inopposite to the facts *instanter*. *Ab initio*, the homeless couple, had a bone to pick with somebody and acted *mala fides*. The plaintiff is not homeless. At all times referred to herein, the plaintiff was a UDC student and in good standing. Plaintiff's Exhibit "O". When the plaintiff entered the David A. Clark School of Law, the plaintiff was in a peaceful frame of mind.

The defendants' arguments that:

> "...Plaintiff abused the privilege of using the UDC law library when he attempted on September 19, 2004, to use the computer lab clearly labeled to be exclusively for the use of law students".
> (University Defendants Motion to Dismiss, Or In the alternative, for Summary Judgment As To Paintiff's Amended complaint of November 28, 2005, hereinafter referred to as "Second Motion's Memorandum", at 5, ¶1).
>
> In any event, the University has *never* (emphasis added) afforded access to its computer labs to persons not authorized to use them.***" (Second Motion's Memorandum at 5, ¶3).

> \*\*\*. Plaintiff entered a computer lab clearly labeled for the exclusive use of Law School students several floors above the general reading area open to the public. To put it mildly, he was rude to a law school student who challenged his right to be there. \*\*\*". (Second Motion's Memorandum at 9, ¶2).

are frivolous arguments!

## POINTS AND AUTHORITIES

### THE POINTS

Point #1: Operational procedures governing the David A. Clark School of Law, the Charles and Hilda Mason Law Library, and the Law Clinic Library and Resource Center are set forth in Title 8, of the District of Columbia Municipal Regulations(hereinafter referred to as "DCMR").

Point #2: There are no restrictions in Title 8, DCMR, prohibiting members of the public from using computer terminals in the Law Clinic Library and Resource Center.

Point #3: The plaintiff has used UDC computer terminals located in the David A. Clark School of Law, for the past five (5) plus years, whenever computer terminals were not available in UDC undergraduate designated areas, *without prior problems*. Plaintiff's Exhibit "P".

### AUTHORITIES

Both the first and fifth causes of action represent the epitome of a controversy.

It has always been our position, that defendant Tshiteya did not have a right to say anything to the plaintiff concerning his presence in the computer lab. Especially, in the tone of voice that she used. Plaintiff's Exhibit "C", at 2, ¶11, at

4

3¶2; Relation-Back Amended Complaint at 5,¶24, at 6,¶¶31-32. *Hypotheses non fingo.*

Attached hereto as Plaintiff's Exhibit "Q" is an operational policy, promulgated by the David A. Clark School of Law. Question # 6, thereof states: "Who may use the computers? Answer: *Everyone may use the computers* (emphasis added), but law students have priority and may ask you to move when all the computers are in use". Therefore, defendants' *causa quaestio*, becausePlaintiff's Exhibit "P" is a direct contradiction of defendants argument referred to above. Plaintiff respectfully request this court, *ecce signum*, Plaintiff's Exhibits "H"and "Q".

## SECOND CAUSE OF ACTION
## EXERCISE OF FREE SPEECH

In our demean opinion, we respectfully submit that this is a simple issue.

According to the defendants, every time that the plaintiff stepped foot into the David A. Clark School of Law, the Charles and Hilda Mason Law Library and the Law Clinic Library and Resource Center, he did so as a member of the general public:

> "***. The law school library is maintained for the law school's students. Everyone else is a member of the public. The public is allowed to use the general reading room, so long as they observe the normal rules of courtesy and do not interfere with the use of the facility by any law student…
> (Second Motion's Memorandum at 4).
>
> "Neither Plaintiff's opposition memorandum nor his further Amended Complaints address the fact and the law that he was just a member of the public in use of the UDC Charles and Hilda Mason Law Library. Plaintiff refuses to recognize the distinction between student discipline and revocation of library privileges to a member of the public. The University did

not seek to discipline plaintiff as a student for his abuse of library privileges on 20 September 2004. They merely revoked his privilege, as a member of the public, to use the law library, something he had been granted as a member of the public, not a student of the university. (Second Motion's Memorandum at 5, ¶2).

Again, no provision of the Postsecondary Education Reorganization Act creating the University of the District of Columbia confers rights of access to University facilities to the general public, or access to graduate and postgraduate program facilities to undergraduate students.***". (Second Motion's Memorandum at 7, ¶1).

*Alea iacta est.*

## POINTS AND AUTHORITIES

### THE POINTS

Point #1: Whenever the plaintiff entered the David A. Clark School of Law, the Charles and Hilda Mason Law Library and the Law Clinic Library and Resource Center, *pro bono publico*, the plaintiff submits that he was an ordinary member of the general public.

Point #2: While the plaintiff was in the law school facility on 19 September 04, a verbal fracas occurred between the plaintiff and defendant Tshiteya. Plaintiff's Exhibits "F", "H" and "I".

Point #3: During the verbal fracas referred to in the preceding paragraph, the defendants accused the plaintiff of speaking words considered to be "opprobrious", "obscene", "foul", "vulgar", "profane" and "indecent", which by definition may be construed as "appalling" and "abusively rude". Plaintiff's Exhibits "E","F","I", and "J".

Point #4: As a result of the verbal fracas referred to in the preceding paragraph, the defendants took adverse action against the Plaintiff. Plaintiff's Exhibit "F".

## AUTHORITIES

It is black-letter law, that, under the circumstances, a member of the general public, may not be subjected to any kind of adverse action, by the State, for speaking words classified as "opprobrious", "obscene", "foul", "vulgar", "profane" and "indecent" which by definition may be construed as "appalling" and "abusively rude". Williams v. District of Columbia, 419 F.2d 638 (CADC1969)(*en banc*); Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed. 2d 408 (1972); and Lewis v. City of New Orleans, 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974). If our reading of the court of appeals opinion in Williams, supra, is correct, the court of appeals, appears to be saying that the State has no business regulating how members of the general public talk to each other. Id. at 644. A sister circuit shares this same philosophy. Cf. Walker v. Dillard, 532 F.2d 3 (CA41975). Any adverse action imposed upon the plaintiff, in his capacity as a *member of the general public*, for speaking words considered to be "opprobrious", "obscene", "foul", "vulgar", "profane" and "indecent", which by definition may be construed as "appalling" and "abusively rude" must be vacated, reversed and expunged from all government records.

### THIRD CAUSE OF ACTION
### LIBERTY INTEREST

### FOURTH CAUSE OF ACTION
### THE CODE OF STUDENT CONDUCT

With respect to the above referred to third and fourth causes of action in the relation-back amended complaint, the defendants appear to argue that:

> "***. The Memorandum from the Western District of Missouri on judicial Standards of Procedure and Substance in Review of Student Discipline in Tax Supported Institutions of Higher Education...does not offer Plaintiff the comfort he seems to think. (Second Motion's Memorandum at 4).
>
> ***. Plaintiff refuses to recognize the distinction between student discipline and revocation of library privileges to a member of the public. The University did not seek to discipline Plaintiff as a student for his abuse of library privileges on September 19, 2004. They merely revoked his privilege as a member of the public, to use the law library, something he had been granted as a member of the public. ***". (Second Motion's Memorandum at 5, ¶2).

The defendants argue, *ore rotundo*, that the plaintiff was not entitled to the rudimentary due process and minimum procedural safeguards set forth in either Plaintiff's Exhibits "G" or "N" because he was not sanctioned as a UDC undergraduate, but rather as a member of the general public. *Totidem verbis*, the third and fourth causes of action do not state a claim upon which relief may be granted. This is a disingenuous, if not frivolous argument because in any proceeding which is to be accorded *finality, members of the general public are entitled to* notice and an opportunity to respond concerning the deprivation of either liberty or property interests. AFSCME Local 2477 v. Billington, 740 F. Supp. 1 at 5

(DC1990); Thompson v. District of Columbia, 428 F.3d 283 at 287-88 (CADC2005); ICO Global Communications LTD v. FCC, 428 F.3d 264 at 268 (CADC2005)(explaining notice requirements); Armstrong v. Manzo, 380 U.S. 545 at 552, 85 S.Ct. 1187, 14 L.Ed. 2d 62 (1962); Goldberg v. Kelly, 397 U.S. 254 at 262-63, 90 S.Ct. 1011 at 1017-18, 25 L.Ed.2d 287 (1970); Fusari v. Steinberg, 419 U.S. 379 at 388-89, 95 S.Ct. 533 at 539-40, 42 L.Ed.2d 521 (1975)(delay of several months in reviewing denial of un-employment benefits raised due process concerns); Mathews v. Eldridge, 424 U.S. 319 at 334-35, 96 S.Ct. 893 at 902-03, 47 L.Ed.2d 18 (1976); Logan v. Zimmerman Brush Co., 455 U.S. 422 at 428, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982); Cleveland Board of Education v. Loudermill, 470 U.S. 532 at 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); Walters v. National Ass'n of Radiation survivors, 473 U.S. 305 at 321, 105 S.Ct. 3180 at 3189, 87 L.Ed.2d 220 (1985); LaChance v. Erickson, 522 U.S. 262 at 266, 118 S.Ct. 753, 139 L.Ed.2d 695 (1998); Quesenberg v. United States, 534 U.S. 161 at 167, 122 S.Ct. 694, 151 L.Ed.2d 597 (2202). The defendants, *ianuis clauses*, adjudged the plaintiff guilty of nonacademic misconduct on UDCs campus. As a result of their finding, or their conclusion or their determination, the defendants imposed a permanent restriction of access to a university facility on the plaintiff, or the defendants took an action, adverse to plaintiff's interests, i.e., the defendants stopped the plaintiff from entering a part of UDC, other people could freely enter. Plaintiff's Exhibit "R". Due process protects a person's liberty in society. When the power of the government has been used against an individual, there is a right to a fair procedure to determine the basis for, and legality of such action. The defendants imposed a substantial physical restraint

9

on the plaintiff's movements at UDC. Plaintiff's Exhibit "R". Without more, the restriction offends the due process clause in either the fifth or fourteenth amendment or both.

By custom and practice, (Relation-Back Amended Complaint at 3, ¶9), the plaintiff has used facilities in the David A. Clark School of Law for five (5) plus years without being enrolled in the law school. This creates a legal expectation or liberty interest:

> "It is now settled beyond controversy that all of the guarantees of the constitution respecting life, liberty and property are equally for the benefit of all citizens of the United States residing permanently or temporarily in the District of Columbia, as of those residing in the several States of the Union". Kerr v. Ross, 5 App. D.C. 241 at 247 (1899).

Plaintiff respectfully request the court *ecce signum*, Plaintiff's Exhibits "P" and "Q".

Under *lex terrae*, the defendants second motion to dismiss, or in the alternative, for summary judgment, is pellucidly *frivolous*.

## LIABILITY

In Philosophy, the major question is "Why". In Science, the major question is "How". In Law, the major question, plain and simple is "Who".

Before the court is the defendants' motion to dismiss, or in the alternative, for summary judgment. If the court denies the defendants' dispositive motion, that is a *prima facie* indication that some named defendant(s) needs to stand trial to determine, if the defendant(s), in his official, or individual capacity, is liable to the

10

plaintiff. There is a need for a trial by jury in this case because the defendants' have drawn into question the plaintiff's veracity:

> "***. Plaintiff's Affidavit paragraph 17 makes no Sense and is not supported by his Exhibit E,¶4. His claim To have returned to the law library half an hour after being Informed on his way out that he was banned, Amended Complaint ¶¶9-12, only to be ejected by a police officer, Defies credulity". (Reply Memorandum of University Defendants In Support of their Motion to Dismiss or for Summary Judgment hereinafter referred to as "Reply Memorandum" at 2, ¶1).
>
> ***. Rather, plaintiff *embellishes his tale* with Allegations *inherently incredible* by their very variance with Both his first complaint and his exhibits. (Second Motion's Memorandum" at 2,¶2)(emphasis added).
>
> ***. In his effort to be more specific about how each Defendant allegedly violated his rights, plaintiff has presumed, Imagined, speculated, and *fabricated about the conduct of the University defendants*". (Second Motion's Memorandum at 3, ¶3) (emphasis added).

We have two points to make in response to the defendants arguments referred to above.

(i)

In his Relation-Back Amended Complaint, at 13,¶¶80-81, the plaintiff alleges that he attempted to enter the David A. Clark School of Law Library on 10 May 2005, two separate times. The defendants dispute this allegation with *post- hoc* rationalization by counsel in brief. That is not evidence. *That is nothing but chatter.* Plaintiff respectfully request the court *ecce signum*, Plaintiff's Exhibit "R".

(ii)

Defendants Board of Trustees, Pollard, Solomon, Baker and Thomas actions and inactions are described in the complaints and exhibits. However, with respect

11

to Dr. William L. Pollard and Dr. Clemmie Solomon, thanks to defendant Tshiteya, we can think of at least four (4) university employees not named in this action who would make excellent substitutes. Plaintiff's Exhibits "F" at 2, and 8,¶3 ("***I told him that I was sending an e-mail to a number of officials at UDC and UDC-DCSL, that someone would lose their jobs over this incident...") and "J".

*Exempli gratia*, Sergeant Larry Johnson, pursuant to a complaint by defendant Tshiteya, put the plaintiff out of the computer lab, after being told by defendant Thomas, that defendant Thomas had given the plaintiff permission to use a UDC computer terminal in the Law Clinic Library and Resource Center. Plaintiff's Exhibit "P". Having seen Sergeant Johnson put the plaintiff out of the computer lab was not good enough for defendant Tshiteya. No. Defendant Tshiteya followed, the plaintiff, and, not one, but two campus police officers from the second floor in Building 39, three floors down, to the library and became verbose. Plaintiff's Exhibit "I". Then defendant Tshiteya e-mailed an eleven (11) page statement to Ms. Shelley Broaderick, Dean of the School of Law, and Messrs. Ernest Jolly, a UDC Vice President and Robert T. Robinson, UDC Vice President for Public Safety & Emergency Management. We already know what Sergeant Johnson knew on 19 September 2004. But with respect to the other three named individuals not yet named as defendants in this action, defendant Board of Trustees will have to tell us what did Broaderick, Jolly and Robinson know and when did they know it. Apparently, UDC Vice President Robinson knew something, Plaintiff's Exhibit "F" at 11,¶3 ("I want something done about this! I want to be told what is going to be done about this!), because Vice President Robinson, *homo*

12

*sum: humani nil a me alieum,* suspended campus police officer Virgil Royal, an x-amount of days, without pay, because of defendant Tshiteya's eleven (11) page account in which she makes reference to Mr. Royal's actions or inactions.

Whoever had supervisory authority and knowledge of the 19 September 2004, incident between the plaintiff and defendant Tshiteya, and failed to stick their noses in this debacle in its embryonic state, *totidem verbis*, failed to ask follow up questions concerning their receipt of defendant Tshiteya's written allocutions, are potentially liable in this matter. If defendants Pollard and Solomon are not liable, can the same be said of Sergeant Larry Johnson, Dean Broderick and Vice Presidents Jolly and Robinson, who are clearly agents and representatives of defendant Board of Trustees? It will be difficult, to say the least, for reasonable men to believe that there were no colloquies, no solloquies between defendant Baker, a professor and director of an autonomous facility, at UDC, and UDC Vice President Robinson and UDC David A. Clark, School of Law Dean Broaderick concerning an e-mail that they all received from defendant Tshiteya.

13

## III. CONCLUSION

For the above stated reasons and others to be considered at the time that the defendants motion(s) to dismiss, or in the alternative, for summary judgment are considered, the defendants motions to dismiss, or for summary judgment should be DENIED.

Respectfully submitted,

RANDOLPH J. GREENE
P.O. Box 36303
Washington, D.C. 20020
(202) 561-4503
Plaintiff Pro se