UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RANDOLPH J. GREENE, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 05-1097 (RWR) |
| WASHINGTON, D.C., *et al.*, | ) |
| Defendants. | ) |

MEMORANDUM OPINION

Plaintiff alleges that he was barred from using the law library at the University of the District of Columbia ("UDC"). He sues the District of Columbia, UDC's Board of Trustees and several individuals under federal and District of Columbia law. The UDC defendants move to dismiss the amended complaint [Doc. No. 35] ("Am. Comp't."), or in the alternative, for summary judgment.[1] Because the complaint fails to state a claim upon which relief may be granted under 42 U.S.C. §§ 1981, 1983, and the University defendants are entitled to qualified immunity, UDC's motion will be granted and the complaint will be dismissed in its entirety.[2]

---

[1] In addition to the Board of Trustees, the motion is brought on behalf of UDC President Dr. William L. Pollard, Vice President of Student Affairs Dr. Clemmie Soloman, Law Library Director Brian Baker and Library Technician William Thomas.

[2] Plaintiff also sues UDC law student Mirielle Tshiteya and the District of Columbia. Although neither defendant has been served with process, dismissal of the complaint against these defendants is authorized by 28 U.S.C. § 1915(e) upon a determination, as is reached below, that the complaint fails to state a claim upon which relief may be granted.

I.  BACKGROUND

The basic facts giving rise to the complaint are not disputed.  At the relevant time, posted signs stated that the law school computer lab was "for the use of law school students only."  Am. Comp't. ¶ 10.  Plaintiff alleges that on September 20, 2004, between 9 p.m. and 10 p.m., he requested permission from defendant William Thomas, a Technician, to use the law school's computer lab. *Id*. ¶ 14.  Thomas granted the request and directed plaintiff to the computer lab. *Id*. ¶ 15. When plaintiff reached an available computer terminal, defendant Mireille B. Tshiteya, a UDC law student, questioned whether plaintiff was a law student. This verbal encounter escalated to the point that plaintiff responded, *inter alia*: "'None of your god dam [sic] business'" *Id*. ¶ 33.  Plaintiff was an undergraduate and not a law student. *Id*. ¶ 1, and Exhs. I, K.  Eventually, Tshiteya called security and plaintiff was escorted out of the lab by "two D.C. Government Police Officers," Am. Comp't. ¶ 42, who "did not permit the plaintiff to return to the computer lab." *Id*. ¶ 47.

Plaintiff alleges that on September 21, 2004, "defendants District of Columbia, Board of Trustees, Pollard, Solomon and Baker considered defendant Tshiteya's written allocutions [and found that] the plaintiff's behavior was 'appalling' and 'abusively rude.'" *Id*. ¶¶ 54-55. Allegedly, plaintiff was charged with "nonacademic misconduct," *id*. ¶ 56, and defendants "decided to restrict plaintiff's access to the law school facility." *Id* ¶ 61. Plaintiff alleges that on May 10, 2005, he "entered UDC's law library to conduct legal research." *Id*. ¶ 73.  After showing identification, plaintiff "was invited to enter the law library." *Id*. ¶ 75.  He "ended his research without incident." *Id*. ¶ 76.  Upon leaving the library, however, plaintiff alleges that Thomas stated that plaintiff would not have been able to enter the library had he been

2

there, *see id*. ¶ 77, and when plaintiff tried to reenter the library, a "D.C. Government Police Officer" told him that he could not reenter the library because "he had been banned." *Id*. ¶ 81.

Plaintiff captions his five causes of actions as follows: "Exercise of Police Powers," *id*. ¶ 90, "Exercise of Free Speech," *id*. ¶ 94, "Liberty Interest," *id*. ¶ 99, "The Code of Student Conduct," *id*. ¶ 106, "Time, Place and Manner Restrictions." *Id*. ¶ 113. He seeks a declaratory judgment, expungement of the September 20, 2004, incident from his records, an apology and monetary damages exceeding $750,000. *See id* at 21-24.

## II.  DISCUSSION

### 1. Subject Matter Jurisdiction

The UDC defendants move to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. In the alternative, these defendants seek summary judgment pursuant to Fed. R. Civ. P. 56 alleging a lack of subject matter jurisdiction. Defendants have not articulated a basis for dismissing the case for lack of subject matter jurisdiction and no basis is otherwise apparent. Plaintiff states that he is bringing his claims under, *inter alia*, 42 U.S.C. §§ 1981, 1983. Am. Comp't. at 1. He alleges that he was barred from UDC's law library without due process of law, in violation of the Fifth Amendment, and was restrained from exercising his right of free speech, in violation of the First Amendment. These alleged violations of constitutional rights fall within the Court's "federal question" jurisdiction. *See* 28 U.S.C. § 1331. Defendants' suggestion to the contrary lacks merit.

2. <u>The Merits of the Complaint</u>

A court may dismiss a complaint on the ground that it fails to state a claim upon which relief may be granted if it appears, assuming the alleged facts to be true and drawing all inferences in plaintiff's favor, that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  *Harris v. Ladner*, 127 F.3d 1121, 1123 (D.C. Cir. 1997); *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).[3]

Plaintiff invokes 42 U.S.C. §§ 1981, 1983.  Section 1981 grants to "[a]ll persons within the jurisdiction of the United States" the enjoyment of rights listed therein "as is enjoyed by white citizens." 42 U.S.C. § 1981.  A claim under this section "is cognizable . . . only if based on racial or ethnic characteristics associated with the national origin in question." *Wesley v. Howard University*, 3 F. Supp. 2d 1, 3 (D.D.C. 1998) (citing *St. Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987)); *accord Mitchell v. DCX, Inc.*, 274 F. Supp. 2d 33, 45 (D.D.C. 2003) (to maintain a § 1981 claim, "a plaintiff must show that a defendant intentionally treated him or her differently because of his or her race").  Plaintiff has not alleged discriminatory treatment based on his race and therefore has failed to state a § 1981 claim.

To sustain his § 1983 claims, plaintiff must show the deprivation of "rights, privileges, or immunities secured by the [federal] Constitution and laws" by a person acting under color of state law.  42 U.S.C. § 1983.

---

[3] Plaintiff makes no allegations against the District of Columbia. Rather, he names the District of Columbia as an indispensable party.  Am. Comp't. ¶ 2.  Unlike many District of Columbia agencies, however, defendant UDC Board of Trustees is an independent agency with the authority to "sue and be sued."  *Armstrong v. District of Columbia Public Library*, 154 F. Supp. 2d 67, 71 (D.D.C. 2001)(citing D.C. Code § 31-1511).  The complaint against the District of Columbia therefore will be dismissed for failure to state a claim upon which relief may be granted.

### A.  The § 1983 Claims Against Defendant Tshiteya

Plaintiff does not allege that defendant Tshiteya was acting under color of state law. To the contrary, he acknowledges that Tshiteya was neither a law enforcement officer nor a UDC employee.  Am. Comp't. ¶ 28.  *Cf. Lopez v. Vanderwater*, 620 F.2d 1229, 1236 (7th Cir. 1980) ("Action taken by a state official who is cloaked with official power and who purports to be acting under color of official right is state action.").  Plaintiff therefore has failed to state a § 1983 claim against this defendant.  To the extent that plaintiff may have common law claims against Tshiteya for the alleged "humiliation, embarrassment, despair, and []sense of helplessness" she caused him, *id*. ¶ 32, his recourse presumably lies under District of Columbia law in the Superior Court of the District of Columbia.

### B.  The § 1983 Claims Against the UDC Defendants

Plaintiff alleges that the UDC defendants barred him from the law library without due process of law.  He also appears to allege that the barring violated his First Amendment right of free speech.  Plaintiff has not provided any evidence of an official bar.  He surmises that "defendant Baker banned the plaintiff . . . and ordered defendant Thomas to enforce his ban." Am. Comp't. ¶ 84.  He implicates the remaining defendants, namely the Board of Trustees, Pollard and Solomon, for allegedly approving the ban.  *Id*. ¶ 86.  Defendant Baker avers, however, that after the September 2004 incident, he "advised [his] staff that [he] did not want Randolph Greene in the Law Library again [and] Mr. Thomas heard [his] instruction," but that he "took no steps to formalize the instruction, such as writing and posting a memo. [He]

did not ask University Campus Police to bar Mr. Greene. . . ." Am. Comp't., Ex. E (Declaration of Brian Baker ¶ 4). Plaintiff has neither identified nor named as a defendant the "D.C. Government Police Officer" who allegedly barred him from reentering the library. Nor has plaintiff proffered any documentation of an official ban to refute Baker's statement to the contrary.[4] Plaintiff therefore cannot substantiate a claim that the officer's acts, even if true, were authorized or sanctioned by UDC. Moreover, plaintiff cannot sustain a claim against UDC as a municipal agency, *see supra* at 4, n.3, because municipal liability may not be based on the unauthorized vicarious acts of municipal employees. *Graham v. Davis*, 880 F.2d 1414, 1420-21 (D.C. Cir. 1989).

Even if Baker's advice to his staff effectively barred plaintiff from the law library, plaintiff's federal claims against the individual defendants may not proceed because defendants rightly assert that they are shielded from liability by the doctrine of qualified immunity. *See* Memorandum of Points and Authorities in Support of University Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment as to Plaintiff's Amended Complaint of November 28, 2005 ("Def.'s Mem.") at 10-11. Qualified immunity protects a government official from a damages lawsuit arising from the performance of his discretionary duties unless the official "'knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the

---

[4] Plaintiff alleges, without any citation to the record, that "[a]fter defendants . . . concluded that plaintiff's behavior was 'appalling' and 'abusively rude,' [they] decided to charge plaintiff with nonacademic misconduct on UDCs campus on 20 September 04." Am. Comp't. ¶ 56. The record reflects that the language plaintiff quotes is found not in a UDC directive prepared in response to the incident in September 2004 but rather in Baker's declaration prepared for this litigation. *See* Pl.'s Ex. E. ¶¶ 3, 7.

action with the malicious intention to cause a deprivation of constitutional rights or other injury. . . . '" *Harlow v. Fitzgerald*, 457 U.S. 800, 813 (1982) (quoting *Wood v. Strickland*, 420 U.S. 308, 322(1975)); *accord Farmer v. Moritsugu*, 163 F.3d 610, 613 (D.C. Cir. 1998). An official enjoys protection from liability "where [his] conduct is objectively reasonable in light of existing law." *Farmer*, 163 F.3d at 613. On the other hand, an official is not shielded from liability where he "could be expected to know that certain conduct would violate statutory or constitutional rights." *Id*. Whether an official has qualified immunity is resolved by a two-step inquiry. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Maye v. Reno*, 231 F. Supp. 2d 332, 336 (D.D.C. 2002). The threshold question is whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right[.]" *Saucier*, 533 U.S. at 201 (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id*. If a violation could be made out, the second inquiry is "whether the [constitutional] right was clearly established." *Id*.

Defendants rely on an unpublished opinion that they assert was issued five years ago by Judge Gladys Kessler of this Court. They contend that the ruling "upheld the University's removal and barring from its computer labs of persons claiming a right of public access." Def.'s Mem. at 10. Although defendants have not produced the opinion, they assert that "University officials, including the Director of the UDC law library, were aware of the rulings and have every reason to believe that they have the authority and the right to exclude from University facilities any person who abuses those facilities or the students and faculty for whom those facilities are maintained." *Id.*; *see* Baker Aff't. ¶ 6 (expressing same).

7

Defendants could have relied just as well on precedent establishing a university's "capacity" to "establish reasonable time, place, and manner regulations." *Widmar v. Vincent,* 454 U.S. 263, 276 (1981) (footnote omitted). The First Amendment does not protect all speech. *See id.* at 277 (affirming "the continuing validity of cases . . . that recognize a University's right to exclude even First Amendment activities that violate reasonable campus rules or substantially interfere with the opportunity of other students to obtain an education.") (citing *Healy v. James*, 408 U.S. 169, 188-89 (1972)).

Plaintiff admits that he responded to Tshiteya's inquiry with an obscenity and that they engaged in a "verbal fracas." Plaintiff's Response to Defendants' Second Motion to Dismiss or in the Alternative, for Summary Judgment [Doc. No. 38] ("Pl.'s Opp.") at 5. Defendants' barring of plaintiff from the law library based on plaintiff's admitted disorderly conduct would have been an objectively reasonable response and thus not in violation of the First Amendment.

As for the Fifth Amendment claim, the due process clause is triggered when one is "deprived of a protected interest," namely life, liberty or property. *UDC Chairs Chapter, American Ass'n of University Professors v. Board of Trustees of University of District of Columbia*, 56 F.3d 1469, 1471 (D.C. Cir. 1995) (citations omitted). "When [as here] neither life nor property is involved, courts--speaking in a sort of shorthand--talk of the need to find a 'liberty interest' before considering what process is due under the Fifth Amendment (or the Fourteenth Amendment)." *Franklin v. District of Columbia*, 163 F.3d 625, 631 (D.C. Cir. 1998) (citations omitted). If a liberty interest is found, due process requires minimally that the target of the deprivation receive notice and the opportunity to be heard. *UDC Chairs Chapter, American Ass'n of University Professors*, 56 F.3d at 1472. Liberty interests may emanate either from the

8

Constitution or from statutory law. *Ellis v. District of Columbia*, 84 F.3d 1413, 1415 (D.C. Cir. 1996). Plaintiff has pointed to nothing in UDC's enabling statute or the student handbook attached to the amended complaint from which a liberty interest in his use of the law library may be found.[5] He therefore has not shown his entitlement to the procedural protections of the due process clause.

Thus, the allegations fail to establish violations of plaintiff's constitutional rights, the individual UDC defendants are immune from liability, and no federal claim could survive against the University.

### III.  CONCLUSION

For the foregoing reasons, the UDC defendants' motion to dismiss will be granted, and the complaint against the District of Columbia and Mirielle Tshiteya will be dismissed *sua sponte*. The exercise of supplemental jurisdiction over any local law claims is declined. A separate Order accompanies this Memorandum Opinion.

_____/s/_____
RICHARD W. ROBERTS
DATE: June 15th, 2006                United States District Judge

---

[5] Plaintiff avers that a document proffered as "Exhibit P" "created legal rights or legal expectations or liberty interests." Pl.'s Opp., Exhibit S (Affidavit of Randolph J. Greene ¶ 11). Plaintiff's Exhibit P, however, is an officer's account of an interview with Professor Helen Frazier about the September 20, 2004, incident. It provides no support for plaintiff's claim of a liberty interest.

9